**IN THE UNITED STATES DISTRICT COURT FOR**
**THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOPE AMSPACHER,<br>ADMINISTRATOR OF THE<br>ESTATE OF ZACHARY KIRCHNER,<br>and MATTHEW KIRCHNER,<br>*Plaintiffs*, | :<br>:<br>:<br>:<br>: | <br><br><br>NO. 1:23-cv-00286 |
| v. | :<br>:<br>: | CIVIL ACTION |
| RED LION AREA SCHOOL<br>DISTRICT, et. al.,<br>*Defendants*. | :<br>:<br>: | JURY TRIAL DEMANDED |

**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT, RED LION AREA SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Hope Amspacher, Administrator of Estate of Zachary Kirchner, files this Brief in Opposition to Defendant, Red Lion Area School District's Motion for Summary Judgment.

# TABLE OF CONTENTS

I. Counter Statement of Facts ..........5

II. Counter Statement of Questions Involved ..........5

III. Legal Argument ..........5

A. A Reasonable Jury could find RLASD Liable under Title IX..........6

1. Zach was Sexually Harassed at the District. ..........6

a. Zach was sexually harassed in eighth grade. ..........7

b. Zach continued to be sexually harassed in ninth grade. ..........9

c. The sexual harassment was severe, pervasive, and deprived Zach of equal access to educational opportunities..........12

i. Evidence of the District's hostile educational environment..........12

ii. Evidence of Zach being deprived of equal access to educational opportunities..........14

2. RLASD knew about the sexual harassment. ..........16

3. Whether the response to the ongoing sexual harassment was "clearly unreasonable" is a question of fact for a jury. ..........19

B. Whether Zach was denied an educational benefit because of his disability is a question of fact for a jury. ..........24

IV. CONCLUSION ..........26

# TABLE OF AUTHORITIES

**Cases**

Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001).....12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)....................................5

Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009)..24

Cheyenne H. v. Pleasant Valley Sch. Dist., 2026 U.S. Dist. LEXIS 250775, *12-13 (M.D. Pa. 2026)........................................................................... 12, 16, 17

D.C. v. Pittsburgh Public Schools, 2022 U.S. Dist. LEXIS 16436 *34 (W.D. Pa. 2022)..........................................................................................24

Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633, 645–50 (1999). 5, 6, 11, 12

DiSalvio v. Lower Merion High School Dist.,158 F.Supp.2d 553, 564 (E.D. Pa. 2001)........................................................................................ 20, 23

Doe by & through Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 533 n.99 (3d Cir. 2018)........................................................................................12

Doe v. Fairfax Cty. Sch. Bd., 1 F.4th 257, 273 (4th Cir. 2021) ...............................23

Doe v. Pennridge Sch. Dist., 413 F. Supp. 3d 393, 403 (E.D. Pa. 2019) ..................6

Hall v. Millersville Univ., 22 F. 4th 397 (3rd Cir. 2022).................................... 22, 23

Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 717 (3d Cir. 1997)..................12

Krebs v. New Kensington-Arnold Sch. Dist., 2016 U.S. Dist. LEXIS 159059 at *3-4 (W.D. Pa. 2016)..........................................................................6

M.W. v. Shikellamy Sch. Dist., 2020 U.S. Dist. LEXIS 104768, *6 (M.D. Pa. 2020) ....................17

McAvoy v. Dickinson College, 115 F.4th 220, 228 (3d Cir. 2024) .................. 19, 23

N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011)...5

S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 262, 265 (3d Cir. 2013) ....................24

Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006)....................20

Scott v. Harris, 550 U.S. 372, 380 (2007)....................5

Swanger v. Warrior Run Sch. Dist., 346 F. Supp. 3d 689, 706 (M.D. Pa. 2018).....25

Tomasello v. Bermudian Springs Area School District, No. 1:25-cv-02127-GAM (M.D. Pa. 2026) ....................20

## I. Counter Statement of Facts

Plaintiff incorporates herein by reference "Plaintiff's Response to the Statement of Material Facts of Defendant, Red Lion Area School District and Counter Statement of Material Facts" which has been filed contemporaneously with this Brief in Opposition.

## II. Counter Statement of Questions Involved

**A. Whether summary judgment should be denied when the known sexual harassment that deprived Zach of educational opportunities at the District persisted because of inaction by District officials?**

**Suggested Answer: Yes.**

**B. Whether summary judgment should be denied since there remains a question of fact as to whether the school should have provided more supports sooner to accommodate plaintiff's disabilities in violation of ADA and Section 504?**

**Suggested Answer: Yes.**

## III. Legal Argument

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party'". N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 475 (3d Cir. 2011) quoting Scott v. Harris, 550 U.S. 372, 380 (2007). When assessing summary judgment, the court must determine whether there is a genuine issue for trial, not weigh the evidence or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### A. A Reasonable Jury could find RLASD Liable under Title IX.

A school district is liable for peer harassment where it (1) had actual knowledge of sex-based harassment (2) that was severe, pervasive, and objectively offensive enough to bar access to educational opportunity, (3) exercised substantial control over the harassers, and (4) was deliberately indifferent. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633, 645–50 (1999).

#### 1. Zach was Sexually Harassed at the District.

Despite the plethora of evidence where District students repeatedly threatened, mocked, and told Zachary Kirchner ("Zach") to kill himself due to his sexual orientation, the District argues there is no evidence that Zach was sexually harassed. Yet, at the same time the District cites to three separate incidents where Zach was sexually harassed. Although there are more than these three incidents, the District's attempt to downplay the extent of this sexual harassment as "a handful of occasions of teasing and homophobic insults" ignores the surrounding circumstances outlined in Davis and the subsequent case law. Davis, 526 U.S. at 561 ("whether gender-oriented conduct rises to the level of actionable 'harassment'…'depends on a constellation of surrounding circumstances…").

In Krebs v. New Kensington-Arnold Sch. Dist., 2016 U.S. Dist. LEXIS 159059 at *3-4 (W.D. Pa. 2016), the court found that a course of harassment by a large group of peers, which included calling the plaintiff fat, ugly, whore, and slut,

being threatened and attacked by female peers, and being told to kill herself, constituted sexual harassment for purposes of Title IX claim. In Doe v. Pennridge Sch. Dist., 413 F. Supp. 3d 393, 403 (E.D. Pa. 2019), the Court held that testimony and documented complaints of gender-based insults like "bitch" and "whore," was "sufficient evidence for a reasonable jury to find she complained of sexual harassment." Similar to Krebs and Doe, Zach endured a similar course of sexual harassment by his peers throughout eighth and ninth grade.

**a. Zach was sexually harassed in eighth grade.**

There is clear testimonial and documentary evidence that Zach was bullied and harassed at school because of his sexual orientation. Zach's classmate, L.R., testified that he knew Zach was gay, was bullied because of his sexual orientation, and identified multiple students that bullied Zach, including D.M. who called Zach "a little faggot…over and over again every day." See Pl. Exhibit A, pp. 16-18. Zach's Assistant Principal, Bill Rickard ("Rickard"), testified that a student calling another student "a little faggot" is sexual harassment. See Def. Exhibit S, p. 88. L.R. also testified about an incident where a student, B. Gilman, made gay jokes to Zach in ninth period during eighth grade. See Pl. Exhibit A, pp. 28-29 ("he would always go to Zach and be like I got a lollipop for you…just making gay jokes to bully him"). Gilman was the son of District teacher, Carol Gilmen. Yet, the District never reprimanded or disciplined a District-employee's child for sexually

harassing another student. Id. at 29. On the other hand, during Zach's eighth grade year, Zach was disciplined for calling someone a "homophobic asshole". See Pl. Exhibit B, RLASD 002803-08. When Zach entered the District in eighth grade, the District knew that Zach experienced difficulty with peers bullying him and "tried to hurt himself last January when peers accused him of being gay…" See Def. Exhibit A, p. 2. Viewing this evidence in the light most favorable to Zach, it is reasonable to infer that another student said or did something homophobic to Zach which prompted Zach to act out. See Pl. Exhibit B, RLASD 002807. The District never investigated, disciplined, or reprimanded the other student. Instead, the student with a known history of attempting to hurt himself for being bullied by his peers due to his sexual orientation was the only student disciplined. This is evidence of discrimination both under Title IX and the District's Title IX policy. See Pl. Exhibit C, RLASD 002738.

L.R. testified that the repeated harassment, both in school and via social media, was having a negative effect on Zach. See Pl. Exhibit A, p. 31 ("when people would always bully him, all it does is it can drive him to kill himself…ever since he's been getting bullied, he said if I were to die, I would die on 4/20."). As early as eighth grade, Zach said he would die on April 20. Id. at 32. It is undisputed that Zach committed suicide on April 20, 2021. See Def. Exhibit X, p. 61. Collectively, this is evidence that Zach was sexually harassed in eighth grade.

Zach's disciplinary records, academic records, counseling records, and evaluation report, were sent to the high school and communicated to Zach's ninth grade counselor, Pamela Scott ("Scott"). See Def. Exhibit B, pp. 92-93. Not only did these District records follow Zach to the ninth grade, but so did his eighth-grade bullies. See Def. Exhibit S, p. 112.

**b. Zach continued to be sexually harassed in ninth grade.**

L.R. testified the sexual harassment continued into ninth grade, and even identified two different students, L.D. and T.F. See Pl. Exhibit A, pp. 16-19 ("they would all call him faggots or they all post it on their social media or they would push him"). L.R.'s testimony about T.F. bullying and harassing Zach at school is corroborated by Matthew Kirchner's ("Matthew") testimony. Matthew testified that he saw T.F. push Zach into a locker during Zach's 9th grade year. See Plaintiff Exhibit D, pp. 47-49. Matthew later told high school principal, Mark Shue, about it. Id. Matthew also testified that he heard District students, including L.R. and D.M., calling Zach a "bitch", "pussy", "faggot", "weirdo" and saying he "shouldn't be in Red Lion". Id. at pp. 54-55. The testimonial evidence of sexual harassment in ninth grade is bolstered by the documentary evidence. Scott's counseling notes corroborate that Zach was called "ugly", "faggot", told to "kill himself", and that it was "happening in the halls." See Def. Exhibit V. During the first month of ninth

grade, another student repeatedly called Zach a "fag". See Def. Exhibit R. As documented by the District, this was deemed to be "harassment":



Student: [redacted] Ranges Add Delete Transfer Pseudo

Grad Year (Grade): 2026 (10) DOB (Age): [redacted] (18) Entity, School, Status: 701, 701, I Default: 701, 701, I

Customize

Gender: M NY Status: I Other ID: [redacted] Phone: [redacted] State ID: [redacted]

Offenses

Views: All Offenses Filters: *All Offenses

| Year | Ent | Date | Time | Inc Nbr | Off | Description | Off/Ref | School | Location | Bus Code | Discipline Officer | Points |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020-21 | 701 | 09/09/2020 | 12:01 pm | 10499 | 16 | Harassment | Offense | 701 | 06 | | WILLIAM RICKARD | 0.00 |

Expand All Collapse All Modify Details (displaying 4 of 4) View Printable Details

Offense Details History

Offense Description: All other forms of Harassment
School: 701 - Red Lion Area Senior HS
Location: 06 - Corridor/Hall
Offense Date: 09/09/2020 Wed 12:01 pm
Classroom Referral: No
Disc. Officer: WILLIAM RICKARD
Referred By: CAROL GILLMEN
Entered On: 09/09/2020 Wed 12:03 pm
Offense Points: 0.00
Classroom Actions:
Offense Comments: [redacted] was calling another student in the class, "fag". He repeated himself several times. The derogatory comment was said to a student in class while we were leaving the building for PE.

RLASD 002735

In other words, in the first month of Zach's freshman year, the same pattern of sexual harassment continued at the District. The evidence shows that the effects of this repeated harassment led to Zach being hospitalized for attempting to commit suicide in December 2020.

On December 2, 2020, Scott was notified that Zach attempted to commit suicide the day prior. See Pl. Exhibit F. Scott was informed that "**bullying at school [w]as the impetus for wanting to kill himself.**" Id. (emphasis added). Scott relayed her "major" concerns to the hospital about Zach returning to the high school and that the school's main request was to identify who was bullying Zach. See Def. Ex. U. A reasonable inference to draw from this evidence is that Scott was concerned about Zach returning to the hostile school environment created by the students that were bullying him. However, Scott's note to the hospital is also

misleading. She claims the District didn't know who was bullying Zach because he "will not share names nor any claims". Yet, three months earlier there is a documented incident of sexual harassment where another student repeatedly called Zach a fag. See Def. Exhibit R.

On January 22, 2021, a month after Zach attempted to commit suicide due to being bullied at school, Zach returned to the District and continued to be bullied and sexually harassed:


per Helen Wells 1-22-21

Corbin, wrestling team
D100 hallway
pushed him in locker

A200 bathroom

H. Wells got him from bathroom
came to Guidance

per H. Zach is afraid to come & report it

Zach threw water bottle in air
pushed into locker
"pick it up faggot or I'll show you how to be gay"

RLASD 000095

See Pl. Exhibit G, RLASD 000095.

Further, "Zach is a fag" was etched into a school bathroom stall door, which was brought to Scott's attention two days after she noted that Zach was called a "faggot" and threatened by a "Corbin". See Pl. Ex. H. When viewing the

documentary and testimonial evidence in the light most favorable to Zach, a reasonable jury could find that he was sexually harassed by his peers throughout eighth and ninth grade.

### c. The sexual harassment was severe, pervasive, and deprived Zach of equal access to educational opportunities.

A student is not required to show physical exclusion to demonstrate that the student has been deprived by the actions of another student or students of an educational opportunity on the basis of sex. Davis, 526 U.S. at 650-51 (emphasis added). Instead, "[t]o show that there is a deprivation of access to educational benefits and services, there must be a showing that the harassment 'so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities.'" Cheyenne H. v. Pleasant Valley Sch. Dist., 2026 U.S. Dist. LEXIS 250775, *12-13 (M.D. Pa. 2026) citing Davis, 526 U.S. at 651.

#### i. Evidence of the District's hostile educational environment.

To constitute actionable sexual harassment, the offending behavior must be sufficiently "severe, pervasive, or objectively offensive" to create a hostile educational environment. Doe by & through Doe v. Boyertown Area Sch. Dist., 897 F.3d 518, 533 n.99 (3d Cir. 2018) (Title IX sexual harassment cases in the educational context should be guided by standards developed in Title VII

workplace sexual harassment cases). When assessing the severity or pervasiveness of harassing conduct, courts must consider the "overall scenario." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001). "Relevant considerations include physical abuse, threatening behavior, and continued exposure to former harassers. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 717 (3d Cir. 1997).

The educational environment at the District saw Zach continually harassed on school grounds, including by former harassers. There were at least six different District students that were known to bully and harass Zach due to his sexual orientation. See Pl. Exhibit A, pp. 16-19; Pl. Exhibit D, pp. 47-55; Def. Exhibit R,; and Pl. Exhibit H, Pl Ex. G. The harassment included T.F., a student known to repeatedly call Zach a "faggot", pushing Zach into a locker during Zach's 9th grade year. See Pl. Exhibit D, pp. 47-49. The harassment included another student threatening Zach in the hallway by saying "pick it up faggot or I'll show you how to be gay." Pl. Exhibit G. The harassment included graffiti in the school stating that "Zach is a fag" with his phone number shared alongside it. See Pl. Exhibit A, p. 39 ("The A200's I saw a bathroom stall and it was like Zach is a fag, here's his number…"); see also Def. Exhibit E, p. 145 (at IEP meetings about the bullying it was discussed "how people were calling him a fag. It was written on the bathroom wall. Zach Kirchner is a fag."). Zach was also called "ugly", "bitch", "pussy",

"faggot", "weirdo", and told he "shouldn't be in Red Lion". See Pl. Exhibit D, pp. 54-55; see also Def. Ex. V. The harassment got so severe that students, who knew that Zach had previously attempted suicide, were telling him to "kill himself" "in the hallways" just a month after Zach was released from the hospital following his latest suicide attempt. See Def. Exhibit V. Teachers didn't do anything about the problem with bullying at the District, which emboldened the bullies. See Pl. Exhibit A, p. 33. Collectively, this is evidence of a hostile school environment created by multiple students severely and persistently sexually harassing Zach throughout eighth and ninth grade.

**ii. Evidence of Zach being deprived of equal access to educational opportunities.**

According to the District's eighth grade discipline records for Zach, every month for the first six months of his eighth-grade year, Zach was being disciplined by the school. See Pl. Exhibit B. Tinah Houck, Zach's eighth grade counselor, noted that Zach was in the counseling office "at least one time a day, sometimes multiple times", which she admitted was above average for her roughly 180 other students. See Def. Exhibit B, pp. 54-55; see also Pl. Exhibit I. Houck also admitted that in Zach's first year at the District he was struggling at school both behaviorally and emotionally. See Def. Exhibit B, p. 57. During this time, Zach was referred for discipline twenty-seven (27) times. Id. Importantly, Houck admitted that these discipline referrals substantially interfered with Zach's ability

to receive an education at the District. See Def. Exhibit B, p. 108. These disciplinary records coincide with Hope's testimony that Zach was acting out in school because he was being bullied. See Def. Exhibit E, p. 167.

According to his ninth-grade counseling records, Zach visited the counseling office six times per month for the first six months of his ninth-grade year. See Def. Exhibit I, RLASD 000443 ("Zachary has visited the counseling office in excess of 30 times since the onset of school."). At these visits Zach received "personal counseling" and "conflict resolution". Id. Scott, testified that "30 visits for any student is excessive." See Def. Exhibit G, p. 112. Further, Zach's failing grades coincide with the testimonial evidence that Zach's education was negatively impacted. See Pl. Exhibit G, RLASD 000316 (evaluation worksheet showed that Zach "failed several classes MP 1 and [was] currently failing several classes MP 2"). This evaluation worksheet also notes that "Zach has had several discipline referrals since the beginning of the year…." Id.

According to the District's January 13, 2021 re-evaluation report, Zach had eighteen (18) office discipline referrals. See Def. Exhibit I, RLASD 000448. Zach's teachers reported "the highest area of concern in emotional behavior disorders and functional impairment." See Def. Exhibit I, RLASD 000456. The report further notes that Zach's "behavioral difficulties seem to interfere with his academic progress." See Def. Exhibit I, RLASD 000444. Again, this is confirmed

by District records in October 2020 and December 2020. See Pl. Exhibit G, RLASD 000293 ("failing nearly every class"); Pl. Exhibit G, RLASD 000298 ("not performing at true academic ability – see grades attached").

As part of the re-evaluation process, Zach's mother *again* informed the District about the emotional and social concerns for her son. Her "main concern for Zach is that he is not working to his potential due to stressors and distractions." See Def. Exhibit I, RLASD 000443. Recall that Hope's input for Zach's re-evaluation came one month after Zach had attempted to commit suicide because he was being bullied at school. See Def. Exhibit I, RLASD 000443-444; Pl. Exhibit F. It is reasonable to infer that those "stressors and distractions" included being bullied at school. Further, prior to returning to the District after his December 2020 suicide attempt, Scott had "major" concerns about his return. See Pl. Exhibit G, RLASD 000299. Viewing this evidence in the light most favorable to Zach, being bullied at school was having a negative impact on his social and academic progress. Zach's disciplinary records, excessive counseling visits, poor grades, and suicide attempts linked to being bullied at school, is evidence that Zach was deprived of equal access to educational opportunities due to the hostile school environment created by the sexual harassment of his peers and the District's continued failure to address it.

**2. RLASD knew about the sexual harassment.**

“A school district may only be found to be deliberately indifferent to *known acts* of student-on-student sexual harassment—the "actual notice" required by Title IX cannot be based on the mere possibility that such harassment might occur.” Cheyenne H., 2026 U.S. Dist. LEXIS 250775 *8, *supra*. At a minimum, actual notice must be provided to an appropriate person at the school district. M.W. v. Shikellamy Sch. Dist., 2020 U.S. Dist. LEXIS 104768, *6 (M.D. Pa. 2020). An “appropriate person” is ‘an official who, at a minimum, has authority to address alleged discrimination and to institute corrective measures on the [district's] behalf.’ Id. This court recently held that a school district had actual knowledge and notice of the harassment under Title IX when the plaintiff sent multiple written incident reports to the district's office, two reports of sexual harassment were reflected in district records, and a principal testified that he had actual knowledge of the harassment. Cheyenne H., 2026 U.S. Dist. LEXIS 250775 *9. The District acknowledges that a school principal is an appropriate person under Title IX. See Pl. Exhibit J, Defendant’s Brief, p. 9.

At the latest, the notice element was met during the first month of Zach’s freshman year. On September 9, 2020, another student repeatedly called Zach a “fag”. See RLASD 002735 and Def. Exhibit S, p. 101. Carol Gilmen, a high school teacher, reported this incident to Zach’s assistant principal. The District determined that this incident was “harassment”. See Def. Exhibit R. By this time,

Rickard already knew Zach was being assigned to him during his transition from eighth to ninth grade because he was "a way with [difficult students]." See Def. Exhibit S. pp. 30-31.

The District was also notified when Matthew informed Principal Shue that T.F., a student known to repeatedly call Zach a "faggot", pushed Zach into a locker during ninth grade. See Pl. Exhibit D, pp. 47-49. The District was aware of these ninth-grade incidents. See Pl. Exhibit A, pp. 20, 28, and 46. There is also evidence that Zach informed teachers that he was being sexually harassed online by District students. See Pl. Exhibit A, pp. 61-62; see also Def. Exhibit X, pp. 68, 88-89. Furthermore, Zach's emotional support teacher, Jenna Knaper, admitted that she knew Zach's sexual orientation made him more susceptible to harassment and bullying by other students at the high school. See Def. Exhibit K, pp. 30-31. The District has not presented any evidence to refute this testimony; however, assuming *arguendo* the District did, the credibility of these witnesses must be assessed by a jury to evalute whether the District knew that Zach was being sexually harassed.

In addition, on December 2, 2020 Scott was notified that Zach tried to commit suicide by hanging himself from a tree in the woods in September 2020 (the same month that Zach was repeatedly called a "fag" by another student in school). See Pl. Exhibit G, RLASD 000313-315; Def. Exhibit R. On December 3,

2020, Scott notified ten (10) different District employees, including Rickard, that Zach was hospitalized for attempting to commit suicide due to being bullied at school. See Pl. Exhibit G, RLASD 000313. Then, on December 9, 2020, Scott documented that "Zach does not want to return to school due to bullying", was called a "faggot", "ugly", told to "kill himself" by students "in the halls." See Pl. Exhibit G, RLASD 000093.

Finally, on March 9, 2021, roughly three months after he attempted suicide due to being bullied at school and one month before Zach committed suicide, Zach's IEP team met because things weren't going well with Zach's behaviors. See Def. Exhibit N, RLASD 001483-1486. At this this meeting, Zach reported that he was "struggling with depression", "it was getting worse", and "he had a constant thought of hurting himself". Id. The District psychologist informed Zach's IEP team that she "is worried about him" because his thoughts of self-harm "is very alarming." Id. The District's claim that it was unaware of the ongoing sexual harassment and the detrimental effect it was having on Zach is not only disingenuous but is refuted by aforementioned evidence.

**3. Whether the response to the ongoing sexual harassment was "clearly unreasonable" is a question of fact for a jury.**

In Davis, the Supreme Court held that deliberate indifference occurs where the Title IX recipient's response "is clearly unreasonable in light of the known circumstances." In McAvoy v. Dickinson College, 115 F.4th 220, 228 (3d Cir.

2024), the Third Circuit held that whether a school's response meets this standard is a question of fact. "It is plausible that a lack of intervention form harsh bullying might foreseeably result in serious harm, and a fully developed record might satisfy the deliberate indifference standard that applies when public officials have time to consider a course of action." Tomasello v. Bermudian Springs Area School District, No. 1:25-cv-02127-GAM (M.D. Pa. 2026) citing Sanford v. Stiles, 456 F.3d 298, 310 (3d Cir. 2006). In DiSalvio v. Lower Merion High School Dist.,158 F.Supp.2d 553, 564 (E.D. Pa. 2001), the court found that when state actors are "on notice about . . . harassment and knew or should have known that their nonfeasance would allow the harassment to continue or worsen . . . their desire that it can continue can be implied." Here, the District diminished the persistent sexual harassment and allowed it to continue by repeated failures to investigate or take reasonable steps to end it.

First, the District blatantly misquoted what their own employee documented about Zach being sexually harassed. See Pl. Exhibit J, Defendant's Brief, p. 13 ("pick it up or he would show you what it meant to be gay"). The District did not provide a citation to this purported quotation, likely because one does not exist. This is not a mere oversight; instead, it is a clear attempt to mislead and dilute the severity of the sexual harassment that Zach endured. As evidenced by Scott's note, another student bullied Zach and told him to "pick it up **faggot** or I'll show you

how to be gay. See Pl. Exhibit G (emphasis added). Despite this glaring omission by the District, there is no evidence that the student who threatened and sexually harassed Zach was reprimanded or disciplined, even though it occurred one month after the District knew that Zach attempted suicide for being bullied at school. This is evidence of deliberate indifference.

Second, the January 22, 2021 bullying incident was not the first incident where Zach was sexually harassed at the District. In fact, it wasn't the first time the District became aware of other students repeatedly called Zach a "fag". On September 9, 2020, another student repeatedly called Zach a "fag". See Def. Exhibit R. Again, the District classified this as "harassment". Id. Despite this derogatory comment about Zach's sexual orientation being classified by the District as "harassment", there was no concurrent investigation by the District's Title IX Coordinator, Gregory Monskie ("Monskie") as required by the District's Bullying and Title IX policies. See Pl. Exhibit K, pp. 56-58. See Pl. Exhibit L, RLASD 000034-37, Pl. Exhibit C, 002736-2744. Despite being required by the District's Title IX policy, Shue, Rickard, Scott, Gilman, Houck, or Persing never notified Monskie of the September 9, 2020 incident, Zach's December 1, 2020 suicide attempt linked bullying at school, the January 22, 2021 incident, or that "Zach is a fag" was etched into school property. See Pl. Exhibit K, pp. 32-33, 42-43, 48, 50-56, and 64-65. The District never conducted a Title IX investigation or

a concurrent bullying investigation pertaining to the sexual harassment of Zach during his tenure at the District. Id. at 56-58. Collectively, this is evidence of deliberate indifference that a jury must be permitted to consider. See Hall v. Millersville Univ., 22 F. 4th 397 (3rd Cir. 2022) (where failure to follow the District's Title IX policy and report an incident of domestic or dating violence to the Title IX coordinator was not "mere negligence" or "bureaucratic inaction" but instead amounted to an official decision not to remedy the harassment, which "at the very least" was evidence of deliberate indifference for the jury).

Furthermore, with regard to January 22, 2021 incident, on one hand the District admits Zach was called a "homophobic slur", but notes the investigation uncovered that Zach was not thrown into a locker by another student. This student who bullied Zach based on his sexual orientation was not reprimanded or disciplined. Apparently, since the District's investigation concluded that Zach wasn't pushed into a locker, the fact that he was called a faggot and threatened was not worthy of any discipline or further action by the District. This is evidence of deliberate indifference.

In addition, Matthew testified that he saw T.F. push Zach into a locker. See Pl. Exhibit D, pp. 47-49. Matt subsequently told Principal Shue, about it. Id. The fact that there are no District records of Matthew's oral complaint that Zach was physically bullied at school is evidence that the District's High School principal

failed to follow the District's bullying policy. See Pl. Exhibit L, RLASD 000034-37 (oral complaints shall be accepted and documented…the Board directs that verbal and written complaints of bullying shall be investigated promptly"). T.F. was never investigated or reprimanded for pushing Zach into a locker in ninth grade. When viewing Matthew's testimony and the lack of District records about this incident in the light most favorable to Zach, there is a genuine dispute about whether the District failed to follow their own policies or was complicit in permitting students to physically assault Zach without any repercussions. See DiSalvio, *supra*.

Finally, Zach's mother testified that she reported the school bullying to Zach's guidance counselor, assistant principal, and several teachers. Despite the clear evidence to the contrary, District diminished it as Zach's "perception." See Def. Exhibit E, pp 119-120. Further, Rickard told her "[t]hey're just words. He needs to man up and ignore them". Id. at 120. Courts have found deliberate indifference where schools adopted a "blame-the-victim" approach to reported harassment. See Doe v. Fairfax Cty. Sch. Bd., 1 F.4th 257, 273 (4th Cir. 2021) (a jury could reasonably conclude that school officials "improperly trivialized and dismissed the reports of sexual assault…[when] they engaged in a 'blame-the-victim' mentality in investigating and dealing with the bus incident…"). Overall, there is a plethora of evidence for a jury to decide whether the District's response

to the repeated sexual harassment was "clearly unreasonable". See Hall and McAvoy *supra*.

**B. Whether Zach was denied an educational benefit because of his disability is a question of fact for a jury.**

To succeed under Section 504 and ADA, it requires a showing that plaintiff has a disability, was otherwise qualified to participate in a school program, and was denied the benefits of the program or was otherwise subject to discrimination because of a disability. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). A plaintiff must also show intentional discrimination, which can be satisfied by showing that a defendant acted with deliberate indifference. S.H. ex rel. Durrell v. Lower Merion School Dist., 729 F.3d 248, 262, 265 (3d Cir. 2013). To satisfy the deliberate indifference standard, a plaintiff must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated, and (2) failure to act despite that likelihood. Id. at 265. In D.C. v. Pittsburgh Public Schools, 2022 U.S. Dist. LEXIS 16436 *34 (W.D. Pa. 2022), the court denied the district's motion for summary judgment because there was a question of fact as to whether the school should have provided more behavioral supports sooner to accommodate plaintiff's disabilities.

Here, the District concedes the first two elements of Plaintiff's disability claims, namely that Zach was disabled and qualified to participate in a school program. Regarding deliberate indifference, in or around December 2020, Pamela

Scott recorded a conversation with Hope wherein she was informed that "special needs kids are targeted". See Pl. Exhibit G, RLASD 000092. As outlined above, by this time the District was aware of Zach's autism diagnosis, him struggling behaviorally, his poor grades, and him being sexually harassed. The report that "special needs kids are targeted" ties the mistreatment to disability status rather than generalized peer conflict. Plaintiff recognizes that a link between the harassment and the disability is required to prevail. The December 2020 report coupled with the District's knowledge of Zach's autism supplies that link, which at a minimum creates a question of fact for the jury.

When a school district has "actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail", it has failed to act reasonably given the known circumstances and deliberate indifference is satisfied. Swanger v. Warrior Run Sch. Dist., 346 F. Supp. 3d 689, 706 (M.D. Pa. 2018). The record shows exactly that pattern. Students who reported bullying saw the District impose no discipline that only emboldened these students to continue bullying Zach, a special needs student throughout his tenure at the District. A reasonable jury could find it clearly unreasonable to take no action in the face of notice that a special needs student was being bullied based on his disabilities which ultimately deprived him of the same educational benefits that other non-special needs students were able to enjoy.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment must be denied because there remain several genuine issues for a jury to decide at the time of trial.

Respectfully Submitted,

Dated:**11/20/2026**

**ANDREOZZI + FOOTE**
*s/ Konstantinos Patsiopoulos, Esquire* (PA 321871)
*s/ Haley J. Kyllonen, Esquire* (PA 338347)
4503 North Front Street, Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
teamb@vca.law
*Attorneys for Plaintiff*

## CERTIFICATION OF WORD COUNT

In accordance with Local Rule 7.8, while this brief exceeds fifteen (15) pages, the word count is under 5,000 words (exclusive of the Caption, Table of Contents, Table of Authorities, Certifications, and signature blocks). Undersigned counsel has relied upon the word count feature of Microsoft Word, which shows the word count as: 4,985.

Respectfully Submitted,

Dated:**11/20/2026**

**ANDREOZZI + FOOTE**
*s/ Konstantinos Patsiopoulos, Esquire* (PA 321871)
*s/ Haley J. Kyllonen, Esquire* (PA 338347)
4503 North Front Street, Harrisburg, PA 17110
Ph: 717.525.9124 | Fax: 717.525.9143
teamb@vca.law
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The below individual with the firm of Andreozzi + Foote, hereby certifies that I served a copy of the foregoing document(s) upon the individuals at the addresses and in the manner below.

David J. MacMain, Esquire
Tricia M. Ambrose, Esquire
MacMain Leinhauser PC
433 W. Market Street, Suite 200
West Chester, PA 19382
dmacmain@macmainlaw.com
tambrose@macmainlaw.com
*Counsel for Red Lion Area School District*

via ECF

Date: **11/20/2026**

*/s/ Elizabeth Mead*

Elizabeth Mead, Paralegal