IN THE UNITED STATES DISTRICT COURT FOR

THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HOPE AMSPACHER, ET. AL.** | : | CIVIL ACTION |
| Plaintiffs | : | |
| v. | : | No. **1:23-CV-00286** |
| **RED LION AREA SCHOOL DISTRICT, ET. AL.** | : | JURY TRIAL DEMANDED |
| Defendants | : | |

# PLAINTIFF'S RESPONSE TO THE STATEMENT OF MATERIAL FACTS OF DEFENDANT RED LION AREA SCHOOL DISTRICT AND COUNTER STATEMENT OF MATERIAL FACTS[1]

## Identification of the Parties

1. No genuine issue of material fact.

2. No genuine issue of material fact.

3. No genuine issue of material fact.

4. No genuine issue of material fact.

5. No genuine issue of material fact.

## Educational Services Afforded to Kirchner

6. No genuine issue of material fact.

[1] In accordance with LR 56.1, Plaintiff responds to each of Defendant's material facts (Doc. 147) and provide additional material facts not included by Defendant which are necessary in opposing Defendant's Motion for Summary Judgment.

7. There is a genuine issue of material fact as to whether Zach's behavioral issues in eighth grade were independent of the peer harassment he endured. Before Zach was evaluated, his mother informed the District that Zach experienced difficulty with peers bullying him and "tried to hurt himself last January when peers accused him of being gay." See Def. Ex. A, p.2. Zach's eighth grade counselor, Tinah Houck ("Houck"), admitted Zach was struggling both behaviorally and emotionally, was in the counseling office "at least one time a day, sometimes multiples times." See Def. Ex. B, pp. 54-55, 57.

8. There is a genuine issue of material fact as to Defendant's characterization that Zach was evaluated because of his behavior alone. The evaluation documents show that the District was informed of Zach's diagnoses of ADHD, Autism, and Anxiety, his difficulty with peer bullying, and his prior self-harm after peers accused him of being gay. See Def. Ex. A, p. 2.

9. There is a genuine issue of material fact because the District's psychologist that administered Zach's initial evaluation failed to investigate and assess Zach for emotional disturbance, which would have aided in the District's assessment as to whether Zach qualified for special education services under the emotional disturbance category. See Def. Ex. J, pp. 60-68 (school psychologist, Dr. Persing, testified that she would have at least collected more information to investigate Zach for emotional disturbance, especially given his prior diagnoses and

his "at-risk" scores on the District's initial evaluation). Dr. Persing's re-evaluation qualified Zach for special education services under the emotional disturbance category. Id. at p. 65.

10. No genuine issue of material fact.

11. No genuine issue of material fact.

12. No genuine issue that a Positive Behavior Support Plan was put in place.

13. Denied as stated. Houck testified that the 504 plan was put in place to support him not just in the academic setting, but in school in general, especially since the initial evaluation report that the 504 plan was derived from concluded that "behavioral supports may be beneficial to implement for Zach in the attempt to improve his social interactions with his peer group." See Def. Ex. A, p. 21.

14. No genuine issue that part of the 504 Plan required these strategies to be implemented. Whether the District implemented those strategies as outlined in Zach's 504 Plan is a genuine issue of material of fact that a jury must decide when determining whether District violated the American with Disabilities Act and Section 504 of the Rehabilitation Act.

15. There is a genuine issue of material fact as to whether Houck in fact spoke with Zach weekly. Houck testified only to what she "would have" done. See Def. Ex. B. at p. 94.

16. It is admitted that Hope testified that she didn't remember whether she requested that the District comply with or follow through with Zach's 504 Plan.

17. No genuine issue of material fact.

18. No genuine issue of material fact.

19. No genuine issue of material fact.

20. No genuine issue of material fact.

21. No genuine issue of material fact.

22. No genuine issue of material fact.

23. There is a genuine issue of material fact as to whether the Emotional Support classroom was a place where Zach's needs could be addressed. His emotional support teacher, Jenna Knaper ("Knaper"), witnessed peers saying "horrible things" to Zach, recalled having to "clear the room because it almost turned physical" between Zach and student H.B., and admitted Zach's sexual orientation made him more susceptible to harassment and bullying at the high school. See Def. Ex. K, pp. 27-31. Knaper also testified that Zach only lasted a month in her Emotional Support classroom, which is "much less than average", because they "quickly saw that his needs were not necessarily able to be met within our program…") Id. at pp. 37-38.

24. No genuine issue of material fact.

25. No genuine issue of material fact.

26. No genuine issue that these services were recommended as part of Zach's initial IEP. Whether the District implemented and adhered to those recommendations is a genuine issue of material of fact that a jury must decide when determining whether District violated the American with Disabilities Act and Section 504 of the Rehabilitation Act.

27. No genuine issue of material fact.

28. No genuine issue of material fact.

29. No genuine issue of material fact.

30. No genuine issue of material fact except that the meeting occurred on March 11, 2021, not March 11, 2020, as Zach was not in ninth grade in March 2020. (Def. Ex. O).

31. No genuine issue of material fact.

32. No genuine issue of material fact.

33. No genuine issue of material fact.

34. No genuine issue of material fact that Dr. Persing testified that the TES program provided these accommodations, but does not say that students' needs were met, if at all, due to these accommodations.

35. No genuine issue of material fact.

36. No genuine issue of material fact.

37. No genuine issue of material fact that Plaintiff testified that she didn't remember whether she did or did not express concerns; however, the IEP records reflect that Plaintiff did express concerns during the evaluation process and IEP meetings. For example, Plaintiff raised bullying concerns with the District staff, but was told it was Zach's "perception" and "[h]e needs to man up and ignore them. See Def. Ex. E, pp. 119-120.

**Kirchner's Alleged Harassment**

38. No genuine issue of material fact. By way of further response, the District classified the offense as "Harassment," the referring staff member was teacher Carol Gillmen, and the entry state that another student was calling Zach a "fag" repeatedly. (Def. Ex. R, RLASD, 002770.

39. No genuine issue of material fact.

40. There is a genuine issue of material fact as to whether the student was disciplined. Mr. Rickard's testimony that the student "would have" received discipline is speculation. See Def. Ex. S, pp. 102, 131. The Skyward entry records 0.00 offense points and identifies no consequence imposed. See Def Ex. R, RLASD_002735.

41. No genuine issue of material fact.

42. No genuine issue of material fact.

43. There is genuine issue of material fact as to whether having the School Resource Office accompanied Zach for one day “addressed the concern.”, especially since the harassment of Zach continued after October 7, 2020. See Def. Ex. V; Def. Ex. W; see also Pl. Ex. F.

44. There is a genuine issue of material fact as to whether Zach’s reports of bullying were only “general” and without detail. The District's own records identify specific incidents, slurs and locations, including the September 9, 2020 Skyward entry (See Def. Ex. R), the December 9, 2020 note recording that Zach was called a "faggot" and told to "kill himself" and that it was "happening in the halls" (Def. Ex. V). Further, Matthew Kirchner reported T.F. pushing Zach into a locker to Principal Mark Shue. See Pl. Ex. D, pp. 47-49. Zach told teachers that District students were sexually harassing him online. Id. at 61-62; see also Def. Ex. X, pp. 68, 88-89.

45. No genuine issue of material fact.

46. No genuine issue of material fact that this is a part of what Scott reported to the hospital. However, Scott’s note to the hospital is misleading. She claims the District didn’t know who was bullying Zach because he “will not share names nor any claims”. Yet, three months earlier there is a documented incident of sexual harassment where another student repeatedly called Zach a fag. See Def. Ex. R.

47. No genuine issue of material fact that this is a part of what Scott reported to the hospital. However, Scott's note to the hospital is misleading. She claims the District didn't know who was bullying Zach because he "will not share names nor any claims". Yet, three months earlier there is a documented incident of sexual harassment where another student repeatedly called Zach a fag. Id.

48. No genuine issue of material fact.

49. No genuine issue of material fact.

50. No genuine issue of material fact.

51. No genuine issue of material fact.

52. There is a genuine issue of material fact as to the content of the January 22, 2021 incident. Pam Scott's ("Scott") note records the student telling Zach to "pick it up faggot or I'll show you how to be gay" and that Zach "is afraid to come & report it." See Def. Ex. W. Further, on one hand the District admits that the January 22, 2021 incident involved Zach being called a "homophobic slur", but notes the investigation uncovered that Zach was not thrown into a locker by another student. The student who bullied Zach based on his sexual orientation was not reprimanded or disciplined. Apparently, since the District's investigation concluded that Zach wasn't pushed into a locker, the fact that he was called a faggot and threatened was not worthy of any discipline or further action by the District. This evidence creates a genuine dispute as to whether the District was deliberately indifferent.

53. There is a genuine issue of material fact as to Defendant's characterization of a "verbal confrontation" between Zach and the student. The District's own note records that the other student directed homophobic slurs and threats at Zach. See Def. Ex. W; Def. Ex. G, p. 32.

54. There is a genuine issue of material fact as to whether the bullying was confined to social media and locations outside school. L.R. testified that students called Zach a "faggot" and shoved him into lockers at school. See Pl. Ex. A, pp. 16-19. Scott recorded that the harassment was "happening in the halls." See Def. Ex. V.

55. No genuine issue of material fact.

56. No genuine issue of material fact that the District received the reports contained in Exhibits Z, AA, and BB. By way of further response, each report is dated March or April 2021. By then, the District already knew that students had repeatedly bullied Zach, that Zach had attempted suicide, and that "bullying at school was the impetus for wanting to kill himself." See Def. Ex. R, Pl. Ex. F.

## PLAINTIFF'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS

### Zach Arrives at the District in 2019

57. In the Fall of 2019, the District evaluated Zachary Kirchner ("Zach") for special education eligibility. During the evaluation, Zach's mother, Hope Amspacher ("Hope") informed the District that Zach had ADHD, Autism, and

Anxiety, lacked social skills, had difficult with peers bullying him, and "tried to hurt himself last January when peers accused him of being gay." See Def. Ex. A, p. 2. The District recorded this history in its October 22, 2019, Evaluation Report. Id.

58. District psychologist, Lucy Zarfos, failed to test Zach, a student with known history of emotional disturbance, under the emotional disturbance category despite scores during the evaluation that suggested Zach was at-risk. Id. at pp. 8-9. Dr. Persing, the District psychologist who re-evaluated Zach, testified that she would have investigated and collected more information on Zach's emotional disturbance given Zach's history and his at-risk scores. See Def. Ex. J, p. 68.

59. Zach never had any input, via a self-report form or interview with the school psychologist, in the District's initial evaluation. See Def. Ex. A.

60. Based on Lucy Zarfos's initial evaluation, the District determined that Zach did not qualify for special education services. Id.

**Zach's Sexual Harassment in Eighth Grade**

61. During Zach's eighth grade year at the District, he was subjected to severe bullying.

62. Zach was open about being gay. His classmate L.R. knew Zach was gay because he "always said that to everyone." See Pl. Ex. A, p.16.

63. L.R., who shared a math class with Zach in eighth grade, recalled that people would throw crumbled paper at him and push him into lockers. Id. at 18:2-3.

64. Classmate D.M. bullied Zach for being gay, calling Zach “a little faggot” “over and over again every day”. Id. at 18:10-17.

65. Assistant Principal Bill Rickard agreed at his deposition that a student calling another student “a little faggot” is sexual harassment. See Def. Ex. S, p. 88.

66. Other classmates, L.D. and T.F., called Zach a faggot and posted about him on social media and pushed him, including at school. See Pl. Ex. A, p. 19.

67. L.R. testified that in eighth grade, ninth period, in Ms. Taylor's class, student B.G. "would always go to Zach and be like I got a lollipop for you . . . just making gay jokes to bully him." Id. at 29:1-11.

68. B.G.’s mother, Carol Gillmen, was a Red Lion Area High School teacher, and the District never reprimanded or disciplined a District-employee’s child for sexually harassing Zach. Id. at 29.

69. On the other hand, on October 9, 2019, the District disciplined Zach for calling another student a "homophobic asshole". The District did not investigate, discipline or reprimand the other student. See Pl. Ex. B. These material facts, coupled with the material fact outlined in paragraph 66, is evidence that the District discriminated against Zach based on his sexual orientation.

70. The District disciplined Zach every month for the first six months of the school years, and he was referred for discipline 27 times during that period. (Id.; See also Def. Ex. B, p. 60:11-23.

71. Over the same months, Zach was in the counseling office "at least one time a day, sometimes multiple times," which his counselor, Tinah Houck ("Houck"), admitted was above average among her roughly 180 students. Id. at 41:19-21, 55:1-8; See also Pl. Ex. I.

72. Houck acknowledged that Zach was struggling both behaviorally and emotionally in his first year at the District. Id. at 57:3-13.

73. Houck admitted the 27 referrals substantially impacted his education. Id. at 108:15-23.

74. Hope testified Zach was acting out in school because he was being bullied because of his sexual orientation. See Def. Ex. E, p. 145.

75. The District's Title IX policy provides that "a school employee who suspects or is notified that a student has been subject to conduct that constitutes a violation of this policy shall immediately report the incident to the building principal, as well as properly making any mandatory police or child protective services reports required by law." See Pl. Ex. C.

**Zach's Sexual Harassment in Ninth Grade**

76. When Zach transitioned to the high school, his eighth-grade records, including the documentation of this harassment, were transferred and communicated to his ninth-grade counselor, Pamela Scott. See Def. Ex. B, pp. 92:3-25, 93:1-10.

77. On September 9, 2020, a District student repeatedly called Zach a "fag" in class as the students left the building for PE. Teacher Carol Gillmen referred the incident, and the District coded it as a "Harassment" offense, with Mr. Rickard as discipline officer and 0.00 offense points assessed. See Def. Ex. R.

78. That same month, Zach attempted suicide by hanging himself from a tree in the woods. See RLASD 000556-557; see also Pl. Exhibit G, RLASD 000313-315; Def. Exhibit R.

79. The District initiated no Title IX report or investigation. See Def. Ex. S, p. 149:9-13; see also Pl. Ex. K, p. 58:11-20.

80. During his ninth-grade year, the harassment turned physical and students were “shoving him around” and pushing him into lockers. (L.R. Dep. Tr. at 18:3-4).

81. Zack’s brother, Matthew Kirchner (“Matthew”), saw student T.F. push Zach into a locker and reported it to High School Principal Mark Shue (“Shue”). See Pl. Ex. D, p. 47:22-24, 48:1-25, 49:4-13.

82. Matthew personally heard L.R. and D.M. call Zach a "faggot" multiple times, along with "bitch," "pussy" and "weirdo," and tell him "he shouldn't be in Red Lion." He estimated hearing "20 or 30 different comments just walking by." Id. at 55:3-19.

83. Zach visited the counseling office about six times per month during the first months of ninth grade. See Def. Ex. I at RLASD 000443.

84. Zach's high school counselor, Pamela Scott, testified that thirty visits is excessive for any student. See Def. Ex. G, p. 112:1-3.

85. By December 2, 2020, the District, including Zach's high school counselor and assistant principal, knew of Zach's September 2020 suicide attempt. See Pl. Ex. F; Def. Ex. U.

86. On December 2, 2020, Zach ingested nail polish remover in another attempt to take his life. WellSpan Philhaven notified the District of the attempt, informed the District that Zach had "exhibited self-harming behavior before with cutting," and alerted the District that **"bullying at school [w]as the impetus for wanting to kill himself."** See Pl. Ex. F

87. Four months into Zach's ninth-grade year at the District, Ms. Scott had "major" concerns about Zach returning to the high school. See Def. Ex. U.

88. That same month, District records noted that Zach was "not performing at true academic ability." See Pl. Ex.G, RLASD 000298

89. On January 13, 2021, Zach was re-evaluated. The re-evaluation documented 18 office discipline referrals, noted that his "behavioral difficulties seem to interfere with his academic progress," and reported that his teachers

identified "the highest area of concern in emotional behavior disorders and functional impairment." See Def. Ex. I.

90. On January 22, 2021, about one month after the District learned of Zach's suicide attempts, a student told Zach to "pick it up faggot or I'll show you how to be gay." Another student reported this incident to Scott, which she documented. Pl. Exhibit G, RLASD 000095[2]

91. The District admits that the student had called Zach a "faggot" and threatened to beat him up but concluded that there was no physical abuse. See material fact outlined in paragraphs 52-53.

92. Although disciplinary outcomes were to be documented in Skyward, the District has produced no disciplinary records for the January 22, 2021 incident.

93. As such, a reasonable inference is that the student who bullied Zach based on his sexual orientation was not reprimanded or disciplined.

94. Further, the Title IX Coordinated was never consulted about the incident. See Pl. Ex. K, pp. 40:16-20, 41:9-13.

95. At the high school, "Zach is a fag" was etched in large letters into a bathroom stall door. See Pl. Exhibit A, p. 39 ("The A200's I saw a bathroom stall

[2] In the District's Brief in Support of Motion for Summary Judgment, the District quotes this note as "pick it up or he would show you what it meant to be gay," omitting the slur and providing no record citation. (Compare Def. Br. 13 with Pl. Ex. G, RLASD 000095).

and it was like Zach is a fag, here's his number…"); see also Def. Exhibit E, p. 145 (Plaintiff 011573 attached hereto as Exhibit __).

96. Zach's emotional support teacher, Jenna Knaper, recalled having to "clear the room because it almost turned physical" between Zach and H.B., and she admitted that Zach's sexual orientation made him more susceptible to harassment and bullying by other students at the high school. See Def. Ex. K, pp. 28-31.

**The District Minimizes the Harassment**

97. Throughout this period, Ms. Amspacher reported the school bullying to Zach's guidance counselor, Mr. Rickard and several teachers. The District's response was to repeatedly call it Zach's "perception," and Mr. Rickard told her, "[t]hey're just words. He needs to man up and ignore them." See Def. Ex. E, pp. 119-120.

98. Rickard contradicted himself throughout his deposition. On one hand he admitted that a student calling another student "a little faggot" is sexual harassment." See Def. Exhibit S, p. 88. On the other hand, Rickard would not agree later at his deposition that calling someone a "fag" refers to sexual orientation, explaining, "I can't necessarily agree to that because high school kids will say things that don't - aren't accurate." Id. at p. 97:11-15.

99. Ms. Knaper likewise diminished the sexual harassment as "rude comments." See Def. Ex. K, p. 27.

100. L.R. testified that if a student told a teacher about being bullied, "all they do is talk to the guy and be like don't do it again, but you know they're going to just keep doing it." He agreed that this was well known throughout the school and that it emboldened students to treat each other badly. See Pl. Ex. A, p. 33.

101. Despite being required by the District's Title IX policy, Shue, Rickard, Scott, Gilman, Houck, or Persing never notified the District's Title IX Coordinator of the September 9, 2020 incident, Zach's December 1, 2020 suicide attempt linked bullying at school, the January 22, 2021 incident, or that "Zach is a fag" was etched into school property. See Pl. Exhibit K, pp. 32-33, 42-43, 48, 50-56, and 64-65.

102. The District never conducted a Title IX investigation or a concurrent bullying investigation pertaining to the sexual harassment of Zach during his tenure at the District. Id. at 56-58.

**The District Knew about the Harassment**

103. Rickard already knew Zach was being assigned to him during Zach's transition from eighth to ninth grade because he was "difficult students". See Def. Exhibit S. pp. 30-31.

104. The first month of Zach's freshman year, another student repeatedly called Zach a "fag". See RLASD 002735 and Def. Exhibit S, p. 101.

105. Carol Gilmen, a high school teacher, reported this incident to Rickard.

106. The District determined that this incident was “harassment”. See Def. Exhibit R.

107. During freshman year, Matthew, saw student T.F. push Zach into a locker and reported it to High School Principal Mark Shue (“Shue”). See Pl. Ex. D, p. 47:22-24, 48:1-25, 49:4-13.

108. In or around December 2020, Scott recorded a conversation with Hope wherein she was informed that “special needs kids are targeted”. See Pl. Exhibit G, RLASD 000092.

109. On December 2, 2020, Scott was notified that Zach tried to commit suicide by hanging himself from a tree in the woods in September 2020 (the same month that Zach was repeatedly called a “fag” by another student in school). See Pl. Exhibit G, RLASD 000313-315; Def. Exhibit R.

110. On December 3, 2020, Scott notified ten (10) different District employees, including Rickard, that Zach was hospitalized for attempting to commit suicide due to being bullied at school. See Pl. Exhibit G, RLASD 000313.

111. On December 9, 2020, Scott documented that “Zach does not want to return to school due to bullying”, was called a “faggot”, “ugly”, told to “kill himself” by students “in the halls.” See Pl. Exhibit G, RLASD 000093.

112. Finally, on March 9, 2021, roughly three months after he attempted suicide due to being bullied at school and one month before Zach committed suicide,

Zach's IEP team met because things weren't going well with Zach's behaviors. See Def. Exhibit N, RLASD 001483-1486.

113. Zach informed his IEP team, that consisted of teachers, counselors, principals, social workers, and the District's psychologist, that he was "struggling with depression", "it was getting worse", and "he had a constant thought of hurting himself". Id.

114. On March 9, 2021, the District psychologist informed Zach's IEP team that she "is worried about him" because his thoughts of self-harm "is very alarming." Id.

115. On April 20, 2021, Zach committed suicide at his home and was discovered by District employees, Jason Hoffman and Officer Greenly. See Def. Exhibit X, p. 61.

Respectfully Submitted:

**ANDREOZZI + FOOTE**

Dated: 11/20/2026

*/s/ Konstantinos Patsiopoulos*
Konstantinos Patsiopoulos, Esq. (PA 321871)
Haley J. Kyllonen, Esq. (PA 338347)
teamb@vca.law
4503 North Front St., Harrisburg, PA 17110
Ph: 800.706.2764 | Fax: 717.525.9143
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The below individual with the firm of Andreozzi + Foote, hereby certifies that I served a copy of the foregoing document(s) upon the individuals at the addresses and in the manner below.

David J. MacMain, Esquire
Tricia M. Ambrose, Esquire
MacMain Leinhauser PC
433 W. Market Street, Suite 200
West Chester, PA 19382
dmacmain@macmainlaw.com
tambrose@macmainlaw.com
*Counsel for Red Lion Area School District*

via ECF

Date: **11/20/2026**

/s/ Elizabeth Mead

Elizabeth Mead, Paralegal