# EXHIBIT J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOPE AMSPACHER, ADMINISTRATOR OF THE ESTATE OF ZACHARY KIRCHNER AND MATTHEW KIRCHNER | : | Docket No. 1:23-cv-00286 |
| Plaintiff, | : | |
| v. | : | |
| RED LION AREA SCHOOL DISTRICT, *et al.*, | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF DEFENDANT RED LION AREA SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION AND PROCEDURAL HISTORY .......... 1

II. STATEMENT OF FACTS .......... 2

III. STATEMENT OF QUESTIONS INOVLVED .......... 2

1. Should Plaintiff's Title IX claim be dismissed as the Plaintiff has failed present any evidence that RLASD was on notice that Kirchner was subject to sexual harassment that was severe and pervasive and was deliberately indifferent to that harassment that deprived him educational opportunities and benefits? .......... 2

2. Should Plaintiff's ADA and Rehabilitation Act claims be dismissed as Plaintiff has failed to establish evidence that the RLASD intentionally discriminated against Kirchner based on his disability? .......... 2

IV. ARGUMENT .......... 3

A. Plaintiff's Title IX Sexual Harassment Claim (Count II) must be Dismissed .......... 4

*1. Kircher Was Not Subject to Sexual Harassment* .......... 6

*2. RLASD Did not Have Notice of Sexual Harassment* .......... 9

*3. RLASD Was Not Deliberately Indifferent* .......... 11

B. Plaintiff's Americans with Disabilities Act and Rehabilitation Act (Counts III and IV) Claim must be Dismissed .......... 14

*1. RLASD Did not Deny Kirchner Educational Benefits* .......... 15

*2. RLASD was Not Deliberately Indifferent* .......... 18

V. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## Cases

*Adam v. Scanton Sch. Dist.*, 2011 U.S. Dist. LEXIS 102981 (M.D.Pa. 2011).......16

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................3

*Beam v. Western Wayne Sch. Dist.*, 165 F. Supp. 3d 200 (M.D. Pa. Feb. 24, 2016) ............................................................................................. 15, 16, 19

*Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355 (3d Cir. 2005).......................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................3, 4

*Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176 (3d Cir. 2009) ............................................................................................15

*D.V. v. Pennsauken Sch. Dist.*, 247 F. Supp. 3d 464 (2017) ..............................8, 12

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999)........................................................................................ passim

*Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 2008 WL 857453 (W.D. Pa. 2008) ..............................................................................11

*Doe v. Methacton Sch. Dist.*, 2026 U.S. Dist. LEXIS 67143 (E.D. Pa. 2026) ......6, 7

*Dorsey ex rel. J.D. v. Pueblo Sch. Dist. 60*, 215 F. Supp. 3d 1082 (D. Colo. 2016) ...................................................................................................19

*Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992)..............................................................................................5

*Gaudino v. Stroudsburg Area Sch. Dist.*, No. 3-cv-12-2159, 2013 U.S. Dist. LEXIS 102382, 2013 WL 3863955 (M.D. Pa. July 23, 2013).......................................15

*Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)..........................................................................................11

*George v. Board of Educ. of the Tp. of Millburn*, 34 F. Supp. 3d 442 (D.N.J. 2014) ...................................................................................................12

*Hall v. Millersville Univ.*, 22 F.4th 397 (2022) ....................................................10

*Hernandez v. Borough of Palisades Park Police Dep't.*, 58 F. App'x 909 (3rd Cir. 2003) ...........................................................................................3, 4

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005)..............................................................................................5

*L.W. ex rel. L.G. v. Toms River Regional Schools Bd. of Educ.*, 189 N.J. 381, 915 A.2d 535 (2007)..........................................................................................8

*Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739 (W.D. Pa. 2018)............6
*M.S. v. Susquehanna Twp. Sch. Dist.*, No. 13-2718, 2017 U.S. Dist. LEXIS 47916, 2017 WL 6397827 (M.D. Pa. 2017)..........11
*McAvoy v. Dickinson Coll.*, No. 1:20CV1327, 2023 U.S. Dist. LEXIS 172332, 2023 WL 6276670 (M.D. Pa. Sept. 26, 2023)..........13
*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)..........6, 7
*S.H. v. Lower Merion School District*, 729 F.3d 248 (3d Cir. 2013) ..........18
*Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67 (3d Cir. 2014)................ 19, 20
*Vicky M. v. Ne. Educ. Intermediate Unit*, No. 3:06-cv-1898, 2009 U.S. Dist. LEXIS 108666, 2009 WL 4044711 (M.D. Pa. Nov. 20, 2009) ..........15
*Warren v. Reading Sch. Dist.* 278 F.3d 163 (3rd Cir. 2002)..........10

**Statutes**

20 U.S.C. § 1681 ..........5

**Rules**

Fed. R. Civ. P. 56(c) ..........3

Defendant, Red Lion Area School District ("RLASD") by and through its attorneys, MacMain Leinhauser, PC., hereby file this Brief in support of its Motion for Summary Judgment seeking dismissal of Plaintiff's claims.

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff alleged that Zachary Kirchner ("Kirchner") was subject to sexual harassment and intentional discrimination against by RLASD while Kirchner was a student at RLASD. Kirchner started in the RLASD in 2019 and remained a student until April of 2021.

The case has a long and protracted procedural history that involved claims against individual student Defendants that Plaintiff alleged bullied Kirchner. Further, constitutional violation claims against School Resource Officer, Marc Greenly and Kirchner's Therapeutic Emotional Support classroom counselor, Jason Hoffman. Ultimately, all other parties and claims have been dismissed except those against the RLASD.[1] RLASD filed an Answer to the Plaintiffs' Second Amended Complaint. *See*, Doc. No. 67.

There are only three (3) claims that remain before this Honorable Court, violation of Title IX and violation of the ADA and violation of the Rehabilitation

[1] On May 2, 2025, the Court entered default judgment for individual student Defendants, C.H., C.W. and C.A. See, Doc. Nos 112-114.

Act. Discovery has closed and this matter is now ripe for Summary Judgment as per this Court's July 23, 2026, Amended Scheduling Order. *See*, Doc. No. 142.

Because the Plaintiff has failed to establish that Kirchner was subject to sexual harassment, that RLASD had notice of and interfered with his educational opportunities, Plaintiff's Title IX Claim must be dismissed. Similarly, Plaintiff has failed to establish that RLASD intentionally discriminated against Kirchner because of his disability. Therefore, Plaintiff's claims must be dismissed and judgment entered in RLASD's favor.

## II. STATEMENT OF FACTS

Defendants incorporate herein by reference their Statement of Undisputed Material Facts which is being filed contemporaneously with this Motion for Summary Judgment.

## III. STATEMENT OF QUESTIONS INOVLVED

1. Should Plaintiff's Title IX claim be dismissed as the Plaintiff has failed present any evidence that RLASD was on notice that Kirchner was subject to sexual harassment that was severe and pervasive and was deliberately indifferent to that harassment that deprived him educational opportunities and benefits?

SUGGESTED ANSWER: YES.

2. Should Plaintiff's ADA and Rehabilitation Act claims be dismissed as Plaintiff has failed to establish evidence that the RLASD intentionally discriminated against Kirchner based on his disability?

SUGGESTED ANSWER: YES.

## IV. <u>ARGUMENT</u>

Summary judgment should be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when the evidence requires a fact finder to resolve the parties' differing versions of the truth at trial. *Id.* at 249. Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphasis in original).

The standard for ruling on a motion for summary judgment as articulated by the Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) is as follows:

> [T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. *Id.*

"[I]t is proper for a district court to grant summary judgment when a plaintiff fails to produce any evidence on a necessary element of her claim." *Hernandez v. Borough of Palisades Park Police Dep't.*, 58 F. App'x 909, 912 (3rd Cir. 2003)

(citing *Celotex*, 477 U.S. at 323-25). The plaintiff "need not try . . . [his] case by carrying the burden of persuasion, but []he must, at a minimum, produce evidence on every element of . . . [his] claim." *Hernandez*, 58 F. App'x at 912. Thus, the burden on the party moving for summary judgment is not to show the "absence of a genuine issue of material fact," but rather to show "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325.

### A. Plaintiff's Title IX Sexual Harassment Claim (Count II) Must be Dismissed

Plaintiff avers that Kirchner endured years of sexual harassment based on his sexual orientation, that RLASD was aware of such harassment and responded to the harassment with deliberate indifference. *See*, Doc. No. 59 – Count II.

In order to establish a Title IX claim against a school district, the plaintiff must show that: (1) the school district received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under both circumstances where the school district exercised substantial control over both the harasser and the context in which the harassment occurred; (4) the school district had actual knowledge of the harassment; (5) the school district was deliberately indifferent to the harassment; and (6) the harassment was so severe, pervasive, and objectively offensive that it deprived the victim of access to educational opportunities or

benefits provided by the school. *See*, *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999).

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To enforce this prohibition on intentional sex-based discrimination, the Supreme Court has recognized that Title IX implies a private right of action and that monetary damages are available in such suits. *Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005); *see Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992). Because Title IX is legislation enacted pursuant to Congress's authority under the spending clause, however, "private damages actions are available only where recipients of federal funding had adequate notice that they could be liable for the conduct at issue." *Davis ex rel*, 526 U.S. at 640 (1999). Further, recipients of federal funding may be liable for "subjecting" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority. *Id* at 647-649.

*Davis* holds that funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have

actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. *Id* at 651.

### 1. ***Kircher Was Not Subject To Sexual Harassment***

Here, Plaintiff has not set forth any evidence that Kirchner was subject to sexual harassment. To make out a claim for sexual harassment under Title IX, the harassment must be severe or pervasive such that it "effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633 (1999). To support a claim of sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). Third Circuit courts have held that "sporadic and isolated incidents of sexual harassment fail to give rise to a Title IX claim." *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 752-53 (W.D. Pa. 2018).

In *Doe v. Methacton Sch. Dist.*, 2026 U.S. Dist. LEXIS 67143 (E.D. Pa. 2026), the plaintiff averred that over the course of twenty (21) months, another student called her a "whore", said her stomach "looked like a dick", asked if she wanted a poster of Albert Einstein so that she could "suck his dick", and said, "women like you deserve to be slaves". *Id* at *24-25. The Court held, at the Motion

to Dismiss stage, that this conduct was not sufficiently severe or pervasive to state a claim under Title IX.

Further, the *Davis* court held that, that it is not enough to show that a student has been "teased" or "called . . . offensive names" to be liable under Title IX even when that conduct results in a child refusing to go to school or suffers from a decline in grades as a result. *Davis,* 526 U.S. at 654.

The *Davis* Court gave examples of such harassment that deprives access to educational opportunities or benefits. For example, physical threats that prevent peers from accessing an athletic field or computer lab would be considered depriving a student from opportunities. *Id.*

Whether gender-oriented conduct rises to the level of actionable "harassment" "depends on a constellation of surrounding circumstances, expectations, and relationships," *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The *Davis* Court held that Courts "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." *Davis,* 526 U.S. at 652. Students are still learning how to interact appropriately with their peers, as such it is "understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." *Id* at 653.

Further, "isolated schoolyard insults or classroom taunts" are not actionable. *L.W. ex rel. L.G. v. Toms River Regional Schools Bd. of Educ.*, 189 N.J. 381, 915 A.2d 535 (2007). Although any sexually oriented taunts or insults are unacceptable, to be actionable it must be shown that a reasonable student of the same age or maturity would consider the insults sufficiently severe or pervasive to create an intimidating, hostile or offensive school environment. *D.V. v. Pennsauken Sch. Dist.*, 247 F. Supp. 3d 464 (2017).

In *D.V.*, the Court held that the facts demonstrated that D.V. was subject to sexually oriented taunts on one, maybe two occasions, which is the sort of isolated incidents that are not actionable. *Id* at 475. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, "damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Davis*, 526 U.S. at 653 (1999).

Here, the evidence has established that while Kirchner was the subject on a handful of occasions of teasing and homophobic insults, Kirchner was not subject to the severe and pervasive conduct that was required under Title IX to constitute sexual harassment. In fact, based on the conduct of Kirchner, it is clear Kirchner himself would not have considered being called a "fag" or "faggot" "sufficiently

severe or pervasive". In fact, Kirchner himself was reported to have called his classmates, "bitch", "faggot ass bitch" and physically threatened classmates. *See*, Exhibits "Y", "Z", "AA" and "BB".

Further, while Kirchner and the Plaintiff made reports of bullying, there was usually never any specific information provided. There were three (3) instances where Kirchner was called a homophobic slur and another incident where Kirchner reported being concerned about coming to school. *See*, Exhibits "S", "T" and "W". All three (3) of those incidents were addressed by RLASD by way of discipline or support to Kirchner.

What the record has established is a pattern of conflict and unacceptable behavior by both Kirchner and other students that in the school setting does not rise to the level of harassment under Title IX.

***2. RLASD Did Not Have Notice of Sexual Harassment***

Further, there must be both actual notice of the sexual harassment itself, not merely bullying or teasing. *Davis*, 526 U.S. at 642. An "appropriate person" must have "actual knowledge of discrimination in the recipient's programs and fail[] adequately to respond." "A school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX" *Warren v. Reading Sch. Dist.* 278 F.3d 163 at 171 (3rd Cir. 2002). While a physical deprivation of school resources is not

necessary, there must be an explicit willingness by the school officials to allow the gender based discrimination to continue. *Davis*, 526 U.S. at 652.

In *Hall v. Millersville Univ*., 22 F.4th 397 (2022), the Court denied defendant's summary judgment and determined that a jury could find actual notice. In *Hall*, the plaintiff decedent was subject to physical abuse by her boyfriend. The plaintiff reported to several people with authority at the school, her resident assistant prepared a written report of the harassment which was sent to the Title IX Coordinator, as well as the police, and counseling Department. The School did not act, and the plaintiff decedent was killed by her boyfriend. *Id.*

Here, the District had notice of two (2) specific instances of Kirchner being called a "faggot" in the school. Both incidents were investigated and for at least one, the other student was disciplined. All other reports by Kirchner or the Plaintiff were general complaints with no context provided – or reports that bullying was occurring via social media or in the park across the street from the Plaintiff's home.

In order for harassment by a student against another student to be actionable against the school district , "the harassment must take place in a context subject to the school district's control." *Davis*, 526 U.S. at 645. A school district's damages liability is limited to "circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment

occurs." *Id*. Courts have found that harassment that takes place off of school grounds and/or outside of school hours does not occur under circumstances where the District exercised substantial control over either the harasser or the context in which the harassment occurred. *M.S. v. Susquehanna Twp. Sch. Dist.*, No. 13-2718, 2017 U.S. Dist. LEXIS 47916, 2017 WL 6397827, at *10 (M.D. Pa. 2017) (harassment through social media not within district's control); *Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 2008 WL 857453, at *10 n.3 (W.D. Pa. 2008) (excluding from the harassment action at the summary judgment stage any acts by the offender that occurred "outside of the school.").

As such, Plaintiff has failed to establish that the School District had notice that Kirchner was subjected to severe, pervasive, and objectively offensive conduct under Title IX.

***3. RLASD Was Not Deliberately Indifferent***

Deliberate indifference takes place when a school district official "is advised of a Title IX violation [and] refuses to take action[.]" *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998). Thus, deliberate indifference requires "actual knowledge," *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360 (3d Cir. 2005)(defining deliberate indifference as "an official decision by the recipient not to remedy the violation"). There can be no Title IX

liability if the school responds to known peer harassment in a manner "that is not clearly unreasonable." *Davis*, 526 U.S. 648-49 (1999).

Amongst the factors to consider to determine if a defendant "acted reasonably to prevent harassment are the ages of the involved students, development and maturity levels, school culture and atmosphere, rareness or frequency of conduct, duration of harassment, extent and severity of the conduct, whether violence was involved, effectiveness of the school district's response, the consideration of alternative responses and the swiftness of the school's reaction." *George v. Board of Educ. of the Tp. of Millburn*, 34 F. Supp. 3d 442, 457 (D.N.J. 2014).

In, *D.V., supra,* the Court found that the District reasonably addressed reported sexual orientation bullying. The Court held that the District interviewed the allegedly involved students and teacher, conducted an investigation, and promptly responded to the plaintiff's complaints. Further, in one instance, it was determined that the plaintiff was friends with at least one of the alleged bullies. *D.V.*, 247 F.Supp 3d. at 476-477 (2017).

Courts consistently have recognized that a victim's mere discontent with a school's investigation does not establish a Title IX violation." *McAvoy v. Dickinson Coll.*, No. 1:20CV1327, 2023 U.S. Dist. LEXIS 172332, 2023 WL 6276670, at *6-7 (M.D. Pa. Sept. 26, 2023).

Like in *D.V.,* here the RLASD responded to the specific complaints raised by Plaintiff or Kircher related to peer on peer alleged bullying and harassment. In one instance, Kirchner's friend reported that Kirchner was thrown into a locker, a water bottle was thrown on the floor and Kirchner was told to "pick it up or he would show you what it meant to be gay". The incident was investigated, including pulling video of the hallway where the incident was alleged to have occurred. It was determined that while Kirchner was called a homophobic slur, he was not pushed into a locker. See, Exhibit "W". The other incident was investigated, and the other child was disciplined. See, Exhibits "R" and "S". Lastly, Kircher and Plaintiff Amspacher reported an incident that occurred in the park across the street from the Plaintiff's home where Kirchner was concerned for his safety in school the following day. RLASD had Officer Greenly, School Resource Officer accompany Kirchner in school to ensure he felt safe. See, Exhibit "T".

As for the general reports of bullying, Kirchner and Plaintiff did not provide details of any incidents that would allow the District to investigate and respond to the complaints. In fact, Kirchner's guidance counselor, Pamela Scott, requested specific information for which to investigate same. See, Exhibits "U"; "K".

As such, the District was not deliberately indifferent to the Plaintiff's alleged harassment in violation of Title IX. The record does not reflect that Kirchner was

subject to sexual harassment or that the District had notice of and responded to with deliberate indifference. As such, Plaintiff's Title IX claim must be dismissed.

**B. Plaintiff's Americans with Disabilities Act and Rehabilitation Act (Counts III and IV) Claim must be Dismissed**

Plaintiff avers that Kirchner was a qualified individual with a disability and that the RLASD failed to provide Kirchner with reasonable and necessary accommodations which denied him participation in the benefits of RLASD programs and education. *See*, Doc. No. 59 – Count III and IV.

Section 202 of the ADA provides that, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. Similarly, Section 504 of the Rehabilitation Act provides, no otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

The same standards govern both the RA and the ADA claims. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).

To plead a claim under either statute, Plaintiff must set forth facts that would establish that Kirchner, (1) has a disability, (2) was otherwise qualified to participate in a school program, and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability. *Chambers*, 587 F.3d at 189. For Section 504 claims, there are two additional requirements: (4) that "the school or board of education receives federal financial assistance;" and (5) that the denial of benefits or discrimination at issue was "solely on the basis of disability." *See*, *Beam v. Western Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 209 (M.D. Pa. Feb. 24, 2016) (citation omitted).

### *1. RLASD Did Not Deny Kirchner Educational Benefits*

Failing to develop and implement an appropriate plan in response to a students disabilities can amount to an ADA and 504 claim. See, e.g., *Vicky M. v. Ne. Educ. Intermediate Unit*, No. 3:06-cv-1898, 2009 U.S. Dist. LEXIS 108666, 2009 WL 4044711, at *5 (M.D. Pa. Nov. 20, 2009) (explaining that plaintiff was "subjected to a substandard environment for the sole reason that he was disabled" and the fact that he was "not singled out for such discrimination is immaterial"); *Gaudino v. Stroudsburg Area Sch. Dist.*, No. 3-cv-12-2159, 2013 U.S. Dist. LEXIS 102382, 2013 WL 3863955, at *9-*10 (M.D. Pa. July 23, 2013) (denying school district's motion to dismiss ADA and Section 504 claims based on a failure to

comply with the plaintiff's Individual Education Plan, which called for a classroom aide and individualized instruction).

In *Adam v. Scranton Sch. Dist.*, 2011 U.S. Dist. LEXIS 102981 (M.D.Pa. 2011), the Court denied summary judgment for the school district. The district placed Plaintiff, who had autism - and all disabled children within the district - in an out of district placement that was understaffed and dangerous. No nondisabled student was ever placed there. The Court held that a jury could determine that the student was subjected to a substandard environment because of his disability. *Id* at *17.

In *Beam v. W. Wayne Sch. Dist*. 165 F. Supp. 3d 200 (M.D. Pa. 2016), the Court held that the district failed to comply with and modify the child's 504 plan when the child was failing, the district failed to have regular e-mail communications with the parents when teachers had concerns over child's progress as per the child's IEP, could violate the ADA.

Here, there is no dispute that the first two elements are satisfied. Kirchner was disabled and was otherwise qualified to participate in a school program. It is the third element that RLASD avers that Plaintiff cannot establish - whether Kirchner was denied a benefit of an education program because of his disability.

Here, the RLASD actively tried to provide an appropriate education setting for Kirchner. In the close to two (2) school years that Kirchner attended RLASD,

various educational programs and interventions and services were provided to Kirchner.

Specifically, Kirchner underwent an evaluation within six (6) weeks of starting as a student at the RLASD. While he was not qualified for special education, a 504 and functional behavioral assessment were implemented for Kirchner. See, Exhibit “A”. There is no evidence – or even allegations - that the District failed to implement the recommendations of the 504. In fact, Plaintiff testified that she does not recall any instance where the District did not comply with or follow through with the 504 Plan.

Thereafter, Kirchner was revaluated for special education services in January of 2021 and was found to qualify for same. See, Exhibit “H”. An Individual Education Plan (“IEP”) was implemented on February 10, 2021. *See*, Exhibit “I”. In addition, the District modified the accommodations for Kirchner after implementation of the IEP, including changing his schedule, permitting him to not participate in health class, transitioning him to the Emotional Support program and then ultimately to the Therapeutic Emotional Support program. *See*, Exhibits “K” through “O”. Plaintiff testified that she does not recall expressing concerns about the recommendations made in the IEP meetings. *See*, Exhibit “E“.

The record establishes that the District implemented appropriate plans in response to his disabilities and that Kirchner was not discriminated against because of his disability.

### *2. RLASD Was Not Deliberately Indifferent*

Because Plaintiff seeks money damages for her ADA and RA claims, she must show that RLASD intentionally discriminated against Kirchner—that is – that the District was deliberately indifferent. A plaintiff, who is seeking damages, under the ADA and RA can only succeed if he alleges facts from which it can plausibly be inferred that the discrimination was intentional. *S.H. v. Lower Merion School District*, 729 F.3d 248, 261-264 (3d Cir. 2013). The standard for intentional discrimination in this Circuit is deliberate indifference, which involves a two part test. *Id.* at 263. Defendant must have both (1) "knowledge that a harm to a federally protected right is substantially likely," and (2) "a failure to act upon that likelihood." *Id.*

The "intentional discrimination" standard demands proof that, at a minimum, the school district exhibited "deliberate indifference" to the underlying act of discrimination. . . . To show deliberate indifference, a plaintiff must establish "(1) *knowledge* that a federally protected right is substantially likely to be violated . . . and (2) *failure* to act despite that knowledge." [It] "does not require a showing of personal ill will or animosity toward the disabled person," but "must be a

Case 1:23-cv-00286-JPW Document 14-10 Filed 01/13/26 Page 23 of 27

deliberate choice, rather than negligence or bureaucratic inaction." *Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014).

Similar to the considerations *supra*, failing to develop and implement special education plans can amount to deliberate indifference. *Beam v. W. Wayne Sch. Dist.*, 165 F. Supp. 3d 200, 209-13 (M.D. Pa. 2016) (finding plaintiffs sufficiently alleged deliberate indifference for ADA and RA claims where plaintiffs alleged their son required a 504 plan, the school district knew of plaintiffs' son's disabilities and 504 plan, and failed to develop and implement the 504 plan); *Dorsey ex rel. J.D. v. Pueblo Sch. Dist. 60*, 215 F. Supp. 3d 1082, 1090 (D. Colo. 2016)(finding plaintiff pled deliberate indifference for RA claim where plaintiff alleged her 504 plan allowed her to eat snacks in class because of her hypoglycemia, plaintiff's teacher knew of the 504 plan, but refused to allow plaintiff to eat snacks and told plaintiff she would not follow the 504 plan).

In *Shadie supra,* the Third Circuit dismissed plaintiff's 504 claim at summary judgment. In *Shadie*, the plaintiff was autistic and would occasionally "shut down", where she would not be responsive to instruction or communication. One three (3) occasions, a teacher's aide, tried to rouse plaintiff from these modes by using physical prompts and yelling. Two (2) of the three (3) incidents with the aide were brought to the District's and plaintiff parents' attention and interventions were put in place, including removing the aide from the plaintiff's classroom.

Therefore, there was no evidence of intentional discrimination by the District. *Id* at 71-72.

Here, Plaintiff has failed to set forth any evidence that the District was deliberately indifferent towards Kirchner. As discussed, *supra*, the District almost immediately evaluated Kirchner and began providing services to Kirchner to address his academic and behavioral issues, instituting a 504 Plan and Functional Behavior Assessment within six (6) weeks of his start at the District as an eighth grader. See, Exhibit “A”. Thereafter, when he got to the high school, his 504 Plan was renewed. Further, he entered into a positive behavior contract with his guidance counselor Pamela Scott in effort to help improve Kirchner’s behaviors. *See,* Exhibit “F”.

Then in January 2021, Kirchner was reevaluated for special education services, was qualified for same and an IEP was implemented. See, Exhibits “H” and “I”. Regular IEP meetings were held and modifications made to accommodate Kirchner’s needs. See, Exhibits “K” through “O”. There is no evidence that the District failed to implement or comply with the services that Kirchner was provided during his time at RLASD.

As such, Plaintiff has failed to establish evidence that the District intentionally discriminated against Kirchner in violation of the ADA and Rehabilitation Act.

## V. CONCLUSION

Plaintiff has failed to establish evidence to support her claims that the RLASD was on notice that Kirchner was subject to harassment that was severe and pervasive, was deliberately indifferent to that harassment and the harassment and deprived him educational opportunities and benefits. Further, Plaintiff has failed to establish evidence that the RLASD intentionally discriminated against Kirchner based on his disability in violation of the ADA and Rehabilitation Act.

As such, summary judgment must be granted, and Plaintiff's claims must be dismissed.

Respectfully submitted,

**MACMAIN LEINHAUSER PC**

Date: October 30, 2026

By: */s/ Tricia M. Ambrose*

David J. MacMain
Tricia M. Ambrose
PA Attorney I.D. Nos. 59320/200411
433 W. Market Street, Suite 200
West Chester, PA 19382
Phone: (484) 318-7016
*Attorneys for Defendant*
*Red Lion Area School District*

# CERTIFICATE OF WORD COUNT COMPLIANCE

I, Tricia M. Ambrose, Esq., hereby certify that the foregoing *Brief in Support of Defendant's Motion For Summary Judgment* contains 4,734 words, not including the Table of Contents, Table of Authorities and Certificates, pursuant to the word-count feature of the word-processing system (Microsoft Word), and therefore, complies with the word count limit set forth in Local Rule 7.8(b)(2).

Respectfully submitted,

**MACMAIN LEINHAUSER PC**

Date: October 30, 2026

By: */s/ Tricia M. Ambrose*

Tricia M. Ambrose
PA Attorney I.D. No. 200411
433 W. Market Street, Suite 200
West Chester, PA 19382
Phone: (484) 318-7016
*Attorney for Defendant*
*Red Lion Area School District*

**<u>CERTIFICATE OF SERVICE</u>**

I, Tricia M. Ambrose, Esquire, hereby certify that on this 30th day of October 2026, a copy of the foregoing *Brief in Support of Motion for Summary Judgment* is available for viewing and downloading from the electronic filing system for the Eastern District of Pennsylvania. Further, the foregoing pleading was served upon all counsel of record via ECF.

**MACMAIN LEINHAUSER PC**

By: *<u>/s/ Tricia M. Ambrose</u>*

David J. MacMain
Tricia M. Ambrose
PA Attorney I.D. Nos. 59320/200411
433 W. Market Street, Suite 200
West Chester, PA 19382
Phone: (484) 318-7016
*Attorneys for Defendant*
*Red Lion Area School District*